**William Fred SANTIAGO, Plaintiff,**

v.

**BRS, INC., Defendant.**

**Civil No. 81–0150.**

United States District Court,
D. Puerto Rico.

Oct. 22, 1981.

---

Ernesto Maldonado Ortiz, Maldonado & Ortiz, San Juan, P. R., for plaintiff.

Ramón E. Bauzá Higuera, Bauzá & Dávila, Old San Juan, P. R., for defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

This case is now before this Court upon a motion to dismiss for lack of *in personam* jurisdiction. Subject matter jurisdiction of this Court is claimed under Title 28, United States Code, Section 1332, for reasons of diversity of citizenship and that the matter in controversy exceeds the sum of $10,-000.00, exclusive of interest, cost and attorney's fees.

Plaintiff requested and obtained permission of this Court to serve process on defendant pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, which authorizes service, in this instance, under the long-arm statute of the Commonwealth of Puerto Rico, as set forth in Rule 4.7 of the Puerto Rico Rules of Civil Procedure. The record indicates that the procedural requirements of service under said Rule 4.7 were properly satisfied. Whereupon BRS, Inc., expressly without submitting itself to the jurisdiction of this Court, moved for dismissal of the complaint for lack of *in personam* jurisdiction.

This is an action for damages based upon the plaintiff's allegations that while using in Puerto Rico a pair of Nike Sneakers purchased at Second Sole Sportsgood Store, located at 4941 A. Clairemont Drive, San Diego, California, he developed bilateral patellar tendinitis as a result of incorrect alignment during the manufacturing process of said sneakers by the defendant. By reason of the aforesaid, the plaintiff claims "to have been rendered sick, sore, lame and disabled."

Plaintiff is a citizen and resident of the Commonwealth of Puerto Rico. Defendant, BRS, Inc., is incorporated and has its principal place of business in the State of Oregon. BRS, Inc., has in effect a distribution agreement for its products in Puerto Rico with Athletics, Inc. The question is whether defendant is amenable to suit in this jurisdiction, following the established doctrines which govern the reach of state long-arm statutes.

Puerto Rico's long-arm statute provides a possible basis for jurisdiction in this case:

"(a) Where the person to be served is not within Puerto Rico, the General Court of Justice of Puerto Rico shall have personal jurisdiction over said nonresident as if he were a resident . . . if the action or claim arises as a result of the following:

"(1) Such person or his agent carries out business transactions within Puerto Rico; . . . ."

32 L.P.R.A.App. II, R.4.7.

The burden of proving the facts necessary to sustain jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Chemlab Products, Inc. v. Stepanek*, 554 F.2d 371 (9 Cir., 1977); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5 Cir., 1974).

In *Escudé Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902 (1980) the First Circuit, interpreting local law for the purpose of *in personam* jurisdiction over a nonresident defendant, stated:

"In *A. H. Thomas Co. v. Superior Court*, 98 P.R.R. 864 (1970), the Supreme Court of Puerto Rico, relying on *Hanson v. Denckla, supra; McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); and *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), adopted a three pronged test for determining whether *in personam* jurisdiction can be asserted over a nonresident. One, there must be an act done or consumated within the forum by the nonresident defendant. Physical presence is not necessary; the act or transaction may be by mail. Two, the cause of action must arise out of the defendant's action within the forum state. Three, the activity linking defendant, forum and course of action must be substantial enough to meet the due process requirements of 'fair play and substantial justice'."

The guiding principle of due process in the exercise of personal jurisdiction over a nonresident defendant was established by the Supreme Court in *International Shoe Co. v. Washington, supra*, which allows the exercise of jurisdiction over nonresidents who have had certain "minimum contacts" with the forum so that maintenance of the suit "does not offend 'traditional notions' of fair play and substantial justice". 326 U.S. at 316, 66 S.Ct. at 158. This doctrine of minimum contacts was amplified in *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), where it was stated at page 253, 78 S.Ct. at page 1240 that:

"It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."

"Whether defendant's contact with the forum is described as an 'affirmative act' or 'purposeful availment', the inherent foreseeability of consequences is one of the keystones of personal jurisdiction." *Escude Cruz, supra*, at 905, quoting *Vencedor Manufacturing Co. v. Gougler Industries, Inc.*, 557 F.2d 886, 891–2 (1 Cir., 1977).

The recent decision by the Supreme Court of the United States in the case of *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) shows that the trend of recent years is to unquestionably expand the powers of the state forums to impose jurisdiction over nonresident defendants, although the Court warns that such power is not without limits. In *World-Wide Volkswagen*, New York residents who had purchased an automobile from a Massina, New York, retailer, were injured in Oklahoma. They brought a products-liability action and joined as defendants the automobile's manufacturer, Audi, its importer, Volkswagen of America, Inc., its regional distributor, World-Wide Volkswagen Corp., and its retail dealer, Seaway. The Court held that due process would not permit Oklahoma to obtain jurisdiction over the local retailer of the automobile or the New York automobile wholesale distributor who sold to retailers in New York, Connecticut and New Jersey. The Court, in rejecting plaintiffs' argument that jurisdiction was afforded because the mobility of automobiles made it "foreseeable" that a purchaser in Massina, New York, might drive the automobile through Oklahoma, stated at pages 297 to 298, 100 S.Ct. at page 567:

"Rather, it is that defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.... The Due Process Clause, by ensuring the 'orderly administration of the laws', *International Shoe Co. v. Washington*, 326 U.S. [310] at 319, 66 S.Ct. [154] at 159, gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

"When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State, '... it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to

customers, or if the risks are too great, severing its connection with the State. Hence, if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owners or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."

Although the above quotation imposing jurisdiction over the German manufacturer Audi and the American importer Volkswagen is dictum since neither of them contested jurisdiction, the same has been quoted with approval by various circuits; see e.g., *De James v. Magnificence Carriers, Inc.*, 654 F.2d 280 (3 Cir., 1981); *Aycock v. Louisiana Aircraft, Inc.*, 617 F.2d 432, 435 n.5 (5 Cir., 1980); *Polyner v. Erma Werke GMBH*, 618 F.2d 1186, 1192 (6 Cir., 1980); *Oswalt v. Scripto*, 616 F.2d 191 (5 Cir., 1980). In *Oswalt* plaintiff brought action in Texas against a Japanese cigarette lighter manufacturer and an American distributor of the lighter to recover for injuries sustained when the lighter allegedly malfunctioned. The Fifth Circuit held that the Japanese manufacturer, which had manufactured, assembled, sold and delivered in Japan millions of lighters to an American distributor, with the understanding that the distributor would be selling the lighters to a customer with national retail outlets, had reason to know or expect that the lighters would reach Texas in the course of the distribution, and, thus, was subject to *in personam* jurisdiction in Texas.

As pointed out by the Court in *Oswalt v. Scripto, supra,* at 201, n.14:

"Establishment of a distribution system does involve the kind of purposeful availing of the privilege of conducting activities that is critical to jurisdiction."

To the extent that defendant's business may be directly affected by transactions occurring here, it enjoys benefits from the laws of Puerto Rico and from the protection which our law has given to the marketing of its product.

The Act for which a manufacturer is liable is the initial supplying of defective equipment. However, plaintiff's cause of action arose here in Puerto Rico when the defect took effect or was discovered as a result of the allegedly defective sneakers. *Bartholomew v. Appalachian Ins. Co.*, 1 Cir. 655 F.2d 27 (1981).

As stated by the Illinois Supreme Court in *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961),[1] cited favorably by the Supreme Court in *World-Wide Volkswagen:*

"Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State." 176 N.E.2d at 766.

In the case of *Tilley v. Keller Truck and Implement Corp.*, 200 Kan. 641, 438 P.2d 128 (1968), acknowledged and approved in *World-Wide Volkswagen*, the court stated at 134:

"The particular product or service causing the injury need not be sold or performed in the forum State, but the defendant must reasonably have or anticipate financial benefit from the sale, trade, use or servicing of its products in the forum State."

1. In *Gray* the plaintiff was injured in Illinois when a water heater exploded because of a defective valve manufactured by defendant corporation in Ohio, which valve was installed in a hot water heater in Pennsylvania, and sold in the course of commerce and eventually reached Illinois.

BRS, Inc.'s contacts with Puerto Rico are more substantial and direct than those in *Gray, supra,* and those in *Oswalt, supra.* BRS, Inc., has a distributorship agreement with Athletics, Inc., to serve directly the market for its product in Puerto Rico. BRS, Inc., actually knew that its products were marketed in Puerto Rico. This case involves the commercial context and the marketing distribution system contemplated by the dictum in *World-Wide Volkswagen.*

This Court believes that defendant has such minimum contacts that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice". *International Shoe Co. v. Washington, supra.* We should not force plaintiff to travel to a distant state to prosecute an action against someone who allegedly has injured him and who has or can anticipate some direct or indirect financial benefit from the sale of its products in Puerto Rico, and, furthermore, who has or can invoke the benefits and protections provided by the laws within the Commonwealth of Puerto Rico. The growth in markets, transportation and communication have made it much less burdensome for a party to defend himself in a State where he engages in economic activity. *Polyner v. Erma Werke GMBH, supra.*

In conclusion, the Court finds that the facts of this case are sufficient to impose *in personam* jurisdiction over BRS, Inc.

Accordingly, in view of the above, the Court hereby ORDERS that defendant's Motion to Dismiss for lack of *in personam* jurisdiction, be and is hereby DENIED.

IT IS SO ORDERED.